UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x

LISA POMPILIO,

                                                            **COMPLAINT**

                    Plaintiff,                     Civil Action No. 7:23-cv-1036

                -against-

VILLAGE OF LARCHMONT, CHRISTOPHER McNERNEY,
in his official capacity as Chief of Police and individually;
RONALD KNUDSON, in his official capacity as Lieutenant and
Individually; JOSEPH PAPROTA, in his official capacity as
Lieutenant and individually; MICHAEL DOUCETTE
in his official capacity as Sergeant and individually;
JAMES CRISTIANO, in his official capacity as Sergeant and
individually; and MICHAEL WALSH, in his official capacity
as Police Officer and individually,

                    Defendants.
----------------------------------------------------------------------------x
          Plaintiff LISA POMPILIO, by and through her attorneys, Murtagh, Cossu, Venditti &

Castro-Blanco, LLP as and for her Complaint, alleges as follows:


                         **NATURE OF THE CASE**

          1.       This is an action for equitable relief and monetary damages on behalf of Plaintiff,

LISA POMPILIO ("Plaintiff") who was and who is prospectively being deprived of her civil and

state constitutional rights as a result of the Defendants' acts of discrimination based upon her

gender and sexual orientation and in retaliation for engaging in protected activity. In addition,

Plaintiff has been and continues to be subjected to sexual harassment, discrimination and a hostile

work environment created, condoned, and tolerated by defendants.

          2.       There is an ongoing pattern of harassment and discrimination which began as far

back as Plaintiff's time in the Police Academy and has continued to the present.  Plaintiff has been

employed by the Village of Larchmont ("Village") as a Police Officer since March 2013. There are, in total, twenty-three (23) members of the police force. Plaintiff was hired directly out of the Police Academy and is one of only four (4) females employed by Village's Police Department. She is the only female supervisor ever to have been employed by the Village as a patrol supervisor and has attained the rank of sergeant. However, notwithstanding her deserved promotion, she has nonetheless continually been subjected to harassment and a severe and pervasive hostile work environment created solely on account of her gender.

3.      Plaintiff is not treated the same as other officers/supervisors similarly situated. Her actions are intensely scrutinized, criticized, denigrated and ridiculed by peers and subordinates, alike, with no repercussions to the perpetrators, and with the purpose to undermine her authority in the department and her ability to perform her duties as an officer.

4.      From the date of her hire in or about March 22, 2013 to the present date, Plaintiff has not and is not treated the same as other officers/supervisors similarly situated. Her actions are intensely scrutinized, criticized, denigrated and ridiculed by peers and subordinates, alike, with no repercussions to the perpetrators, and with the purpose to undermine her authority in the department and her ability to perform her duties as an officer. This includes jokes, comments, remarks and innuendo, both verbal and non-verbal made by numerous co-workers and supervisors from the inception of Plaintiff's employment. These remarks and conduct frequently occurred in the presence and/or with the knowledge of supervisors. Such conduct and remarks created a severe, pervasive, offensive, intimidating, hostile and discriminatory work environment. Males who are similarly situated to Plaintiff are not subjected to the same behavior.

5.      Plaintiff has complained to her supervisors about this behavior both informally and by written complaints, on several occasions, however, neither her complaints nor the offenders

were/are dealt with appropriately. They are ignored, dismissed, derided and given short shrift, without formal investigation, written findings, counseling or appropriate conclusion.

6.       Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

7.       Further, she suffered and continues to suffer ongoing retaliation as a result of her complaints and for having filed an EEOC Charge setting forth such discriminatory and retaliatory conduct. She has been further victimized by the Village of Larchmont Police Department, blackballed in her profession as a police officer as a result of having spoken out about the sexual harassment and retaliation that she has experienced, been described as a "rat," and has lost employment and promotional opportunities as a result.

## JURISDICTION AND VENUE

8.       Jurisdiction of this Court is proper under 18 U.S.C §1965, 28 U.S.C. §§ 1331, 1343 and 2202 to secure protection of and to redress deprivation of rights secured by the First Amendment Freedom of Speech and by the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution and provisions against sex discrimination and retaliation in employment based upon Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et. seq.; 42 U.S.C. §1983, along with applicable provisions of the New York State Constitution and New York State Executive Law.

This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a). This claim is for ongoing and continuing discrimination under New York State Human Rights Law [NYSHRL] §296 (1), unlawful conduct under NYSHRL §296 (6), unlawful and continuing retaliatory conduct under NYSHRL §296 (7) and continuing violation of claimant's constitutional rights.

9.      Venue is based on the place of business of Defendants and the location of the acts that form the basis of this complaint. Venue is proper in this district pursuant to 28 USC §1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Plaintiff has filed suit with this Court within the applicable statute of limitations period.

11.     Plaintiff is not required to exhaust any administrative procedures or remedies prior to suit pursuant to 42 U.S.C. 1983 or under the United States Constitution.

12.     Plaintiff has complied fully with all prerequisites for jurisdiction in this Court by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("First Charge"), which forwarded same to the Department of Justice For Action (*see*, **Exhibit 1** attached hereto).

13.     The original Complaint had been filed within ninety (90) days of receipt of the Department of Justice issuing a notice informing Plaintiff of her right to sue in federal court (*see*, **Exhibit 2** attached hereto).

## NOTICE OF CLAIM

14.     On May 5, 2022 and within 90 days of the accrual of her state law causes of action herein Plaintiff served on the Village of Larchmont a Notice of Claim setting forth the time when, the place where and the manner in which his state law claims arose (*see*, **Exhibit 3** attached hereto).

15.     More than ninety days have elapsed since Plaintiff's Notice of Claim was served upon defendant Village of Larchmont and said defendant has neglected and/or refused to make an adjustment or payment.

## PARTIES

16.     At all times hereinafter mentioned, Plaintiff was and still is a female resident of the County of Westchester, State of New York employed as a police officer by the Village of Larchmont, County of Westchester, State of New York. Plaintiff currently holds the position of Sergeant.

17.     At all times hereinafter mentioned, Defendant Village of Larchmont ("Village") was and still is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York, located in Westchester County with its principal place of business located at 120 Larchmont Avenue, Larchmont, NY 10538.

18.     Defendant Village maintains the Village of Larchmont Police Department (hereinafter referred to as "LPD"), as authorized under the laws of the State of New York, which acts as its agent in the area of law enforcement and for which it is ultimately responsible.

19.     At all relevant times herein, Defendant Village was responsible for the policy, practice, supervision, implementation and conduct of all police department matters. In addition, at all times relevant and material herein, Defendant Village was responsible for ensuring that its personnel obeyed the laws of the United States and the State of New York.

20.     At all times relevant herein, the Village meets the definition of an employer under all applicable state and local statutes.

21.     At all times hereinafter mentioned, Plaintiff was an employee of the Village and LPD within the meaning of the aforementioned statutes.

22.     At all times hereinafter mentioned, Defendant Christopher McNerney was and still is employed by the Village with the title of Police Chief and with a principal place of business at 120 Larchmont Ave, Larchmont, NY 10538.

23.     At all times hereinafter mentioned, Defendant Ronald Knudson was and still is employed by the Village with the title of Lieutenant with a principal place of business at 120 Larchmont Ave, Larchmont, NY 10538. He currently holds the position of Executive Officer for the Detective Division.

24.     From in or about 2014, Defendant Joseph Paprota, was employed by the Village as a Police Sergeant and union representative with a principal place of business at 120 Larchmont Ave, Larchmont, NY 10538. Paprota has since been promoted to Lieutenant and currently holds the position of Patrol Commander.

25.     At all times hereinafter mentioned, Defendant James Cristiano was and still is employed by the Village as a Detective Sergeant with a principal place of business at 120 Larchmont Ave, Larchmont, NY 10538.

26.     At all times hereinafter mentioned, Defendant Michael Doucette was and still is employed by the Village as a Sergeant with a principal place of business at 120 Larchmont Ave, Larchmont, NY 10538.

27.     At all times hereinafter mentioned from 2014 up through his retirement in October 2018, Defendant Michael Walsh was employed by Village as a Police Officer with a principal place of business at 120 Larchmont Ave, Larchmont, NY 105381.

28.     At all relevant times herein, Defendants McNerney, Knudson and Paprota were Command Staff of the LPD.

29.     At all times relevant herein, Defendants Village, McNerney, Knudson, and Paprota were and are responsible for LPD's maintenance and operation, including but not limited to the hiring, firing, granting of promotions and discipline of employees and all other employment related issues. Additionally, said Defendants are policymakers for the LPD and acted as agents of the

Defendant Village, charged with the responsibility of ensuring that employees are not subjected to harassment or discriminatory treatment. They are also responsible for properly training and supervising employees with respect to harassment, discrimination, and retaliation.

30.     At all times relevant herein, Defendants McNerney, Knudson and Paprota had supervisory responsibilities and were responsible for LPD's maintenance and operation, including but not limited to the hiring, firing, granting of promotions and discipline of employees and all other employment related issues.

31.     At all relevant times herein, Defendants, McNerney, Knudson, Paprota, Doucette, Christiano and Walsh aided, abetted, coerced and/or participated in the discriminatory conduct set forth below.

## FACTUAL ALLEGATIONS

32.     Plaintiff was hired on or about March 22, 2013 as a Police Officer with the Village Police Department.

33.     Even prior to her employ, she was the object of speculation and discussion within the Department.  Specifically, she was targeted as a woman and her credentials for the position were questioned.

34.     It was rumored that Plaintiff had a special relationship with then Captain Antonino Rigano; that she was either his niece, that he had a sexual relationship with her or that she was friends with his wife.

35.     None of these rumors was true, but that did not stop Plaintiff from being questioned and "informally" investigated about her background, her abilities or the circumstances under which she was hired to the position in the first place.

36.     The implication was always and continues to be that Plaintiff obtained her position and her subsequent promotions up through and including that of Sergeant, not because of her

abilities, her dedication, and her hard work; but because she was a woman and had used her gender and sexuality to cause her to be hired and subsequently promoted.

37.     That false and sexist narrative has fostered a continual undermining of Plaintiff's experience, authority and position, creating a hostile work environment, making it difficult if not impossible for Plaintiff to supervise those police officers under her command as sergeant, and ultimately endangering the public.

38.     The sexist and discriminatory campaign to undermine and denigrate Plaintiff in the workplace which began even before she arrived on the job with Defendant Sergeant Doucette and Defendant Police Officer Michael Walsh looking into her background, continued through her early years to the present.

39.     Beginning in or about 2014, then-Sergeant, Defendant Lieutenant John Paprota, who was union representative, would unexpectedly arrive at headquarters when Plaintiff was on duty. It was widely known throughout the squad that he was sexually interested in Plaintiff.

40.     He wanted to field train the "cute girl." When Plaintiff was still on probation with the Department, he would speak to Plaintiff about his sexual relationship and problems with his ex-fiancée, describing to Plaintiff in graphic detail, how he had surveilled, and surreptitiously watched while his ex-fiancée engaged in sexual acts with his best friend.

41.     Defendant Paprota's behavior towards Plaintiff arose and continues to be informed by his sexual feelings for her.

42.     Defendant  Paprota has made it known to supervisors that he found Plaintiff to be attractive and that he "liked" her. Plaintiff has continued to rebuff his advances as she has no interest in having a sexual relationship with him or anyone else on the force, preferring to maintain a professional relationship with her colleagues.

43. Defendant Paprota does not accept rejection well and his anger and humiliation at being rejected for his advances continue to affect his behavior towards Plaintiff, which is calculated to humiliate, demean and embarrass her in front of her supervisors, peers and subordinates.

44. On or about February 24, 2015, Defendant Paprota sarcastically commented that Plaintiff needed then-Sergeant Juan Sanchez to "hold her hand" during an arrest, that she could not be trusted, and has throughout Plaintiff's tenure in the police department, complained and criticized Plaintiff to her supervisors, proclaiming –incorrectly – that her arrests were somehow lacking and improper.

45. In the fall of 2016, in an attempt to humiliate and undermine Plaintiff, Defendant Paprota and Plaintiff were on patrol when Plaintiff made an arrest of a male. Rather than compliment her or speak to subordinate officers about the arrest in complimentary and respectful terms, Defendant Paprota chose to make fun of her, laughing and deriding her as having jumped onto the hood of a car to make the arrest.

46. Months later, and continuing through at least August 2021, Paprota continued to ridicule Plaintiff, telling the assembled officers in headquarters, including Captain Rigano, that she had jumped onto the roof of a car in order to make an arrest, when in fact she had done no such thing. At the time, Defendant Paprota was senior to Plaintiff, who had been promoted to a Detective.

47. In January 2018, Defendant Paprota changed the ring tone in police headquarters to signal when it was Plaintiff's call to that of the ring tone that was also used for an emotionally disturbed woman who had been calling into headquarters regularly, thereby insulting and undermining Plaintiff before the entire squad.

48.     The ring tone was not changed back for an entire month and Paprota has denied that he was the perpetrator, although he is the only officer who has the access code to the phone system.

49.     Defendant Paprota has repeatedly threatened Plaintiff that he would be her "boss" one day, implying that when he was in a supervisory position over her, he would make her life on the job even more difficult. He specifically stated this to her on March 30, 2021, the day that her promotion to Patrol Sergeant became effective.

50.     Starting October 2020 through December 2020, Defendant Paprota referred to Plaintiff as a "rat" in front of subordinate officers and civilian employees of the Village, claiming that she could not be trusted, and that as a detective she was untrustworthy because she reported "everything" to the lieutenants, supervisors and Chief of Police.

51.     Plaintiff's then partner, Detective Daniel Hammond, could not escape the taint of being associated with Plaintiff, the only female detective at the time, and has also been subjected to the "rat" description by virtue of that association. Defendant Paprota has never been investigated, counseled nor reprimanded for his behavior towards Plaintiff. In fact he has been promoted to Lieutenant and now serves as Patrol Commander and a member of the Command Staff.

52.     Early on in her career as a police officer and shortly after it was announced that Plaintiff would be promoted to detective, Defendant Police Officer Walsh approached her, grabbed her by the jacket and opened it, stating that he was "just checking to make sure that they didn't slip you a gold badge when no one was looking," in a derisive and demeaning manner, insinuating that a woman could not have attained the position without relying upon her gender, appearance and sexuality.

53.     Defendant Walsh had also stated in front of the squad, that Plaintiff would just "open [her] legs" and a "bright light comes out" and that he would "take [Plaintiff] over [his] knee and spank [her]."

54.     Defendant Walsh, who was also known in the department for speaking in a sexual manner to young women outside of the department, was never reprimanded for his sexist and boorish behavior towards Plaintiff, designed to harass, intimidate, and demean her before her colleagues. He has since retired.

55.     In or about April 2015, Defendant Doucette had commented to Plaintiff about her attire, advising her that his wife did not like what Plaintiff wore to work and telling Plaintiff that she was not allowed to wear perfume and had to wear dowdy clothing, clearly implying that her perfume and clothing were sexually distracting to him and causing problems with his wife.

56.     At no time was Plaintiff's attire or use of perfume inappropriate, nor was Plaintiff at any time sexually interested in Doucette. He, however, is apparently obsessed with Plaintiff's sexuality and private life, even asking her whether she and her then boyfriend, who is an officer in another jurisdiction, were "fucking all the time" when they were at a police conference.

57.     In an attempt to further undermine her, Defendant Paprota and Defendant Doucette – both of whom were PBA representatives as president and vice president respectively – took it upon themselves to conduct an "informal" investigation of Plaintiff when a ticket that she had received in August 2017 was shortly thereafter withdrawn.

58.     Both Defendants Doucette and Defendant Paprota pressured Plaintiff to "come clean" implying without any evidence that the withdrawal had been improper or illegal and, by insinuation, that Plaintiff had done something improper or illegal, all in an effort to further harass, undermine and intimidate Plaintiff while she performed her work duties on the job. The issue of

the ticket had even been a subject of a PBA meeting, with Plaintiff being wrongly threatened with losing her job.

59.     Neither Defendants Doucette nor Paprota have been investigated, counseled, or reprimanded for their conduct. As a result, Plaintiff's work environment continued to grow more hostile.

60.     Commencing in or about May 2015 and continuing through December 2017, Defendant Detective Sergeant James Cristiano had also acted to contribute to the hostile work environment, berating Plaintiff in sexist terms in front of other officers, telling her to "scamper little fox" to get her assignments completed.

61.     When she would ask a question, Defendant Cristiano yelled at her on more than one occasion to "put an apple in it," stop talking, "Yakity yak yak," creating a stereotype of a nagging woman who is not entitled to respect.

62.     Defendant Cristiano's disdain for women, in general, and lack of respect for Plaintiff in particular, was further exemplified by his vulgar and sexist comments that a female defendant who had secreted money in her vagina, had placed the funds in her "jail purse," repeating the coarse slang term several times in front of Plaintiff and other officers.  On information and belief, he used that term because he knew that it made Plaintiff uncomfortable, further contributing to the hostile work environment.

63.     In another effort to undermine Plaintiff and single her out because she is a female, in or about March 2021 and continuing through March 2022, after Plaintiff was promoted to Sergeant but before her probationary period had expired, Defendants Paprota and Doucette excessively scrutinized her conduct on the job in an attempt to find fault with her performance and adversely affect her probationary period.

64.     Defendants Paprota and Doucette were unsuccessful in their attempt to derail Plaintiff's professional path, but their comments and actions, taken solely because Plaintiff was a woman and as Sergeant would be an interloper of their previously exclusively male domain as supervisors, served their ultimate purpose of harassing and increasing pressure on Plaintiff in her performance, further solidifying the hostile work environment that Plaintiff endured and continues to endure to this day.

65.     Shortly after her promotion to Sergeant effective March 30, 2021, Plaintiff was called to a domestic incident, but as there was no physical evidence of violence, used her discretion and did not make an arrest.  Even though Defendant Paprota was not involved in the call, he criticized Plaintiff's handling of the matter and derided her to her supervisors and subordinates, alike, proclaiming that she did not know what she was doing, implying that she was not capable of being a Sergeant, and that she only got the promotion because of an improper personal relationship with Captain Rigano.

66.     This criticism permeated the department, infecting her subordinate patrol officers with disdain for her abilities as an officer and a Sergeant and further exacerbating the already hostile work environment Plaintiff experienced solely because she was a woman.

67.     In or about July 2021, Defendant Paprota complained to Plaintiff that she should take more overtime. She explained to him, that as a single mother she had to be available to her adolescent children and was not able to take overtime as it interfered too much with her parenting responsibilities.

68.     In or about July 14, 2021, Defendant Doucette filed a grievance complaining that Claimant was on day tours and he was not.

69.     Similarly, in or about July 2021, Defendant Sergeant Doucette began to review Plaintiff's arrests in a further attempt to undermine her authority and ability.

70.     On or about November 6, 2021, Plaintiff had made an arrest and made the serious charge of Assault 2nd Degree.

71.     Defendant Doucette took it upon himself to confront her in front of his squad and subordinate officers, trying to physically intimidate her by running up to her with a copy of the Penal Law in his hand, stating that it was a "bad arrest" and that she did not know what she was doing.

72.     This conduct, which was undertaken solely because Plaintiff is a woman, further contributed to the hostile work environment and was designed to undermine and belittle Plaintiff and adversely affect her probationary period as Sergeant.

73.     Although unsuccessful in that attempt, this unnecessary and unsupported criticism, nonetheless contributed to the hostile work environment and adversely affects Plaintiff's interactions with her subordinates and ability to supervise.

74.     Plaintiff has formally complained to the Police Department in writing on at least four occasions and verbally innumerable times. Copies of the internal written complaints are attached as **Exhibit 4**, and their allegations are made a part hereof.

75.     The most recent formal written complaint dated March 25, 2022 concerns incidents of insubordination and disrespect shown to her by subordinate officers and the failure of supervising officers to support plaintiff and reprimand and/or correct them.

76.     In fact, on March 24, 2022, Defendant Sergeant Doucette joined in the acts of subordinate officers in displaying and laughing at an insulting and demeaning cartoon on the squad bulletin board that was clearly aimed at Plaintiff.

77. The said cartoon refers to Plaintiff telling subordinate officers that they were to treat her with respect, rather than question and/or make fun of her directives.

78. Plaintiff has since learned that there were, in fact, two additional cartoons displayed making fun of her and her insistence that she be treated with dignity and respect.

79. Nothing has been done with respect to Plaintiff's formal complaints, no meaningful investigation has been undertaken, and Plaintiff has not even been questioned as to the circumstances giving rise to them.

80. Instead, on March 7, 2022, Defendant Chief McNerney called Plaintiff into his office, to to talk to Plaintiff about her three prior complaints (not the cartoon) dated October 11, 2021; November 15, 2021 and November 29, 2021, together with Defendant Lieutenant Knudson who was supposed to be conducting the internal investigation. (see **Exhibit 4** attached).

81. Plaintiff was simply told that "Toomey said there's no harassment here," without even referencing that Plaintiff's complaint is one of hostile work environment, that arises over a period of time and results from multiple discriminatory and harassing acts as set forth in the formal complaints and above.

82. Upon information and belief, "Toomey" refers to the outside attorneys retained by the Village to defend it in matters of discrimination and hostile work environment.

83. These internal complaints which were supposed to be confidential, were openly discussed on April 6, 2022, at a monthly PBA meeting held with members of the PBA comprised of Village of Larchmont Police Department members both past and present.

84. Defendant Knudson inappropriately discussed the plaintiff's internal complaints, which resulted in her being singled out again for derogatory and harassing conduct by those attending.

85.     Defendant Knudson advised those present that he had handled the earlier complaints – even though they were apparently "resolved" by the Village's outside counsel – but that he was not qualified to investigate the complaint regarding the insulting cartoons.

86.     Instead, that March 25, 2022 complaint was handled by Lieutenant Sanchez and the incident was determined to be not "malicious."

87.     This led to another officer present to demand "when is this Sergeant going to be held accountable and charged with writing people up falsely." Upon information and belief, "this Sergeant" referred to the Plaintiff.

88.     Plainly, this discussion at the PBA meeting was designed to further alienate, ostracize and hold Plaintiff up to continued ridicule and disrespect.

89.     In or about August 1, 2022, Plaintiff provided testimony pursuant to §50-H of the General Municipal Law of the State of New York in connection with her Notice of Claim . The testimony commenced at 10:11 AM and concluded at 5:32 PM, with a short break for lunch.

90.     As further evidence of the applicability of the continuing violations doctrine, retaliatory acts and increasing pressure imposed upon Plaintiff, Defendants "audited" Plaintiff's time off from 2013 to the present in an obvious attempt to find that Plaintiff did something wrong. Less than two weeks after Plaintiff provided her 50-H testimony  by these Defendants, one week later, Defendant Knudson called Plaintiff in to advise her that her SCO days had been audited by Defendant Paprota for the years commencing 2013 through present.  SCO days are "scheduled change off," which means that as a detective, Plaintiff was entitled to an additional 19 days off annually.  Plaintiff was advised that there were issues with her SCO days in 2019 and 2021. According to Knudson, Plaintiff was over by ½ day in 2019 and a full day in 2021. She was told that she had to "give back" 1 ½ days.

91.    Plaintiff advised Knudson that in January 2021, she had cervical cancer and then-Captain Rigano gave her permission to take the time. She also questioned the scrutiny of her permitted time off that had been given to her by Captain Rigano.  Almost two weeks later, Plaintiff was told by Defendant Knudson that the police department was not going to go back on what had been permitted by a prior administration. Plaintiff was ultimately not required to give back any days. The very act of the so-called audit was selective, discriminatory and retaliatory and a failed attempt to find some malfeasance on the part of Plaintiff to selectively berate her and subject her to unwarranted discipline.

92.    On or about August 22, 2022, Defendant Knudson publicly questioned and berated Plaintiff who, among all of her duties, was also the Property Clerk for the LPD, about the return of a former police officer's firearms that had been turned in as a result of a domestic order of protection. The property voucher that had initially been prepared contained inaccurate information. Plaintiff had not prepared the inaccurate property voucher as there had been an internal investigation regarding the officer, who was subsequently terminated. Additionally, she was ordered not to assist in the preparation of the necessary paperwork required to return the firearms, which paperwork mirrored the same inaccuracies as the property voucher. Nonetheless, she was subjected to interrogation and derision, despite her lack of involvement in the original vouchering of the firearms and the direct order that she not assist in their return.

93.    On or about September 6, 2022, Plaintiff was unfairly questioned by both Defendant Knudson and Defendant Paprota about her handling of a domestic situation where she was commanding officer on scene; why she did not make an arrest; and did she make a call for "officer down" when in fact the call was for additional assistance because she did not have enough manpower. She was also questioned about the amount of time expended in responding to this call

17

and why there was overtime expended on this matter. Upon information and belief, the questioning of a commanding officer's handling of a call and the time expended in doing so had never before been done with respect to any other sergeant on scene in the handling of a domestic incident. Plaintiff was singled out as a female supervisor and in retaliation for having filed an EEOC charge as well as a Notice of Claim setting forth the discriminatory and retaliatory conduct that she has experienced on account of her gender and creating and contributing to a hostile work environment.

94.     In furtherance of the discrimination, hostile work environment and retaliation that Plaintiff continues to experience, on January 23, 2023, she was confronted by Defendant Knudson who advised her that a police officer under her command had filed a complaint that he was "uncomfortable" with Plaintiff discussing an incident involving a "sex scandal" involving police officers in Tennessee that had been reported in the press. Plaintiff was presented with a written complaint but was not permitted to read the second page of the two-page document. She was then ordered to respond to the complaint, which she did.

95.     Upon information and belief, this so-called complaint was concocted by members of the LPD to further place pressure on Plaintiff in her position as the only female supervisor employed by the LPD and diminish the seriousness of her own complaints of sexual harassment and discrimination that were met with disdain and contempt, further contributing to the hostile work environment and retaliatory environment in which she continues to work.

96.     Nothing has been done to rectify the situation or address the harassment, intimidation, hostile work environment and retaliation that Plaintiff has experienced on account of her gender.

97.     Instead, in an attempt to sweep the matter under the rug, Plaintiff was simply told that there was no harassment, no one had done anything wrong, and her complaints were

summarily disregarded, leaving Plaintiff at the mercy of the rest of the members of the Police Department to continue to antagonize and harass her as the sole female supervisor in the Department.

98.     Plaintiff has always performed her duties and functions as a member of the LPD in an exemplary manner and she is a highly dedicated and loyal public servant.

99.     However, Plaintiff, because of her gender is not able to advance her career in the same manner and to the same extent that a male has been able to do within the department. As more specifically demonstrated herein, the inability of women like Plaintiff to advance to the most prestigious executive positions within the LPD is due to the gender based and long-standing "glass ceiling" pattern and practice within the LPD which inhibits, prohibits and denies career advancement to women.

100.    The hostile environment and discriminatory conduct set forth as aforesaid so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of such violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

101.    As a result of the foregoing discriminatory actions and ensuing hostile work environment, Plaintiff has been humiliated, disrespected and embarrassed resulting in emotional distress, severe anxiety, mental anguish and physical ailments.

102.    Plaintiff has suffered and endured irreparable damage to her professional reputation.

103.    The hostile environment was and is also maintained through actual and perceived threats of retaliation. Retaliation was and is directed by supervisors or co-workers for actual or perceived slights, conflicts, or complaints.

104.    Retaliation manifests in superior officers imposing undesirable assignments, dangerous assignments, unequal application of work rules, criticism, and discipline.

105.    Retaliation further takes the form of disciplinary conduct whereby an officer is subjected to negative treatment, including but not limited to heightened scrutiny so as to impose discipline for minor offenses or performance deficiencies that would otherwise not result in discipline. It also includes negative work assignments, denial of leave, the "silent treatment," and other demeaning treatment. It is used by senior officers and supervisory personnel to compel compliance or suppression.

106.    By using the above-described tactics, Defendants were and are able to maliciously promote, ratify and condone a sexually severe, pervasive and hostile work environment as well as to perpetuate discrimination towards Plaintiff through a discriminatory effect and application of otherwise gender-neutral employment rules and regulations concerning the terms and conditions of employment.

## FIRST CAUSE OF ACTION UNDER TITLE VII
### For Discrimination Based Upon Gender

107.    Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

108.    Plaintiff alleges that Defendant Village through its agents engaged in a pattern and practice of discrimination against her with respect to the terms, conditions and privileges of employment because of Plaintiff's gender and sexual orientation in violation of 42 U.S.C. § 2002e-2.

109.    As part of its pattern and practice of employment discrimination, defendant Village, through its agents treated Plaintiff in a manner indicative of gender discrimination.

110.    Defendant Village, through its agents, knew or should have known about the gender discrimination in the workplace.

111.    Defendant Village, through its agents, failed and refused to take appropriate action to end the discriminatory treatment and conditions which Plaintiff was subjected to, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith, and acted with malice and in reckless disregard of Plaintiff's rights under Title VII.

112.    Defendant Village through its agents acted with deliberate indifference to the protections and mandates of Title VII.

113.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

114.    Defendants' conduct has so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## SECOND CAUSE OF ACTION UNDER TITLE VII
### For Sexual Harassment

115.    Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

116.    Plaintiff alleges that Defendant Village through its agents engaged in a pattern and practice of sexual harassment against her with respect to the terms, conditions, and

privileges of employment because of Plaintiff's gender and sexual orientation in violation of 42 U.S.C. §2002e-2.

117.   As part of its pattern and practice of employment discrimination, Defendant Village, through its agents subjected Plaintiff to sexual harassment and failed to take corrective action.

118.   Defendant Village, through its agents, knew or should have known about the sexual harassment in the workplace.

119.   Defendant Village, through its agents, failed and refused to take appropriate action to end the sexual harassment to which Plaintiff was subjected, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith, and acted with malice and in reckless disregard of Plaintiff's rights under Title VII.

120.   Defendant Village through its agents acted with deliberate indifference to the protections and mandates of Title VII.

121.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

122.   Defendants' conduct has so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## THIRD CAUSE OF ACTION UNDER TITLE VII
## For Hostile Work Environment

123.    Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

124.    Plaintiff alleges that Defendant Village through its agents created and condoned a hostile work environment against Plaintiff in violation of Title VII.

125.    In taking the above-described actions, Defendants acted with malice and in reckless disregard of Plaintiff's rights under Title VII.

126.    Defendants' discriminatory and harassing acts were such that a reasonable person in Plaintiff's position would have perceived the work environment to be hostile, abusive or offensive and Plaintiff actually perceives the work environment to be hostile, abusive or offensive.

127.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits as, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

128.    Defendants' conduct has so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## FOURTH CAUSE OF ACTION UNDER TITLE VII
### For Retaliation

129.    Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

130.    This claim is also authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., for relief based upon the unlawful employment practices of the Defendant Village through its agents in retaliating against Plaintiff for complaining about and filing complaints for discrimination and retaliation on the basis of sex.

131.    The acts which Plaintiff complains of herein supporting her claim for retaliation took place as a result of and in retaliation for, including but not limited to, complaining to her supervisors about the discriminatory conduct towards her, filing internal reports, and filing an EEOC Charge of Discrimination.

132.    Defendant Village through its agents knew or should have known that Plaintiff's supervisors and co-workers were harassing her in retaliation for making a discrimination complaint against the defendants and subsequent complaints of continuing discrimination, sexual harassment and retaliation.

133.    Defendant Village through its agents acted negligently in response to the retaliation, failing to halt the harassment or to take any corrective action.

134.    Defendant Village through its agents acted with malice and in reckless disregard of the protections and mandates of Title VII.

135.    Defendant Village through its agents acted with deliberate indifference to the protections and mandates of Title VII.

136.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a loss benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

137.     Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

### FIFTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Discrimination Based Upon Gender

138.     Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

139.     Plaintiff alleges that the Defendants through their agents, while acting under color of law, intentionally subjected Plaintiff to discrimination on account of her gender and engaged in a pattern and practice of discrimination against her in violation of 42 U.S.C. §1983.

140.     As part of their pattern and practice of discrimination, Defendants through their agents treated Plaintiff in a manner indicative of gender discrimination, with respect to their failure to take corrective action. Defendant Village, through its agents, knew or should have known about the discrimination.

141.     Defendants failed and refused to take appropriate action to end the discriminatory treatment and conditions to which Plaintiff was subjected, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith and acted with malice and in reckless disregard of Plaintiff's rights under the First and Fourteenth Amendments.

142. Defendant Village through its agents acted with deliberate indifference to the protections and mandates of the First and Fourteenth Amendments.

143. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

144. Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## SIXTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Sexual Harassment As Against All Individual Defendants

145. Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

146. Plaintiff alleges that all individual Defendants through their agents, while acting under color of law, engaged in a pattern and practice of sexual harassment against her in violation of 42 U.S.C. §1983.

147. As part of its pattern and practice of discrimination, all individual Defendants treated Plaintiff in a manner indicative of sexual harassment, with respect to their failure to take corrective action.

148. All individual Defendants knew or should have known about the sexual harassment in the workplace.

149.   All individual Defendants failed and refused to take appropriate action to end the sexual harassment to which Plaintiff was subjected, which was clearly motivated by gender and sexual orientation in a clear demonstration of bad faith, and acted with malice and in reckless disregard and deliberate indifference to Plaintiff's constitutional rights.

150.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

151.   Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## SEVENTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Retaliation

152.   Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

153.   Plaintiff alleges that all individual Defendants, while acting under color of law, engaged in a pattern and practice of retaliation against Plaintiff as a result of her complaining about the sexual harassment and discriminatory treatment in violation of 42 U.S.C. §1983.

154.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the

effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

155. Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## EIGHTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
## For Hostile Work Environment

156. Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

157. Plaintiff alleges that all individual Defendants through their agents, while acting under color of law, created and condoned a hostile work environment against Plaintiff in violation of 42 U.S.C. §1983.

158. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

159. Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## NINTH CAUSE OF ACTION UNDER 42 U.S.C. §1983
### For Violation of Equal Protection and Denial of Due Process
### Against All Individual Defendants

160.     Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

161.     The individual Defendants have embarked on a course of conduct while acting under color of law that deprived Plaintiff of her rights under the United States Constitution, Federal and state law.

162.     The facts and circumstances cited above with reference to the Constitution and other civil rights violations suffered by Plaintiff are examples of Defendants' violations of Plaintiff's civil rights.

163.     The actions of Defendants, acting under color of state and local law, custom and usage, have deprived Plaintiff of her rights, privileges and immunities under the laws and Constitution of the United States, and on particular, her rights to due process under the First and Fourteenth Amendments.

164.     By these actions, Defendants have jointly and severally deprived Plaintiff of her rights under the First and Fourteenth Amendment to the United States Constitution, in violation of 42 U.S.C. §1983.

165.     As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of

her life and will prevent her from functioning as she did prior to the conduct complained of herein.

166.    Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

## TENTH CAUSE OF ACTION FOR MONELL VIOLATION UNDER 42 USC §1983
### As Against Defendants Village, McNerney, Knudsen and Paprota

167.    Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein

168.    At all times material to this Complaint, the Village and LPD had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

169.    At all times material to this Complaint, the Village and LPD failed to properly train, screen, supervise or discipline employees and police officers, and failed to inform the individual Defendants' supervisors of their need to train, screen, supervise or discipline the individually named Defendants.  The policies, practices, customs and usages were a direct and proximate cause of the unconstitutional conduct alleged herein, causing injury and damage in violation of Plaintiff's constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First and Fourteenth Amendments.

170.    All of the foregoing acts deprived Plaintiff of federally protected constitutional rights.

171.    Defendants, individually and collectively, while acting under color of state law, engaged in conduct that constituted a procedure, custom, usage, practice, rule and/or regulation of the municipal authority Village that violates the Constitution of the United States.

172.    In addition, the Village and the LPD engaged in a practice, policy or custom of inadequate screening, hiring, investigation, retaining, training and supervision of its employees that was the moving force behind the violation of the Plaintiff's rights as described in this Complaint, by reason of the failure of the Village to properly recruit, screen, train, discipline and supervise its officers, including the individual Defendants.

173.    That the Village and LPD have tacitly ratified and authorized the conduct complained of and have displayed deliberate indifference to the acts and conduct complained of herein.

174.    That the Village and LPD through a policy, practice or custom, directly caused the constitutional violations suffered by the Plaintiff.

175.    The foregoing customs, policies, practices, procedures and rules of the Village and LPD constituted deliberate indifference to the safety, well-being and constitutional rights of the Plaintiff.

176.    The failure to act by the Village and LPD resulted in a violation of Plaintiff's constitutional rights.

177.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

178.   Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

**ELEVENTH CAUSE OF ACTION FOR DISCRIMINATION UNDER NYSHRL §296 (1)**
**As Against All Defendants**

179.   103.   Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

180.   The acts committed by these Defendants as set forth at length above. which are all deemed a part of this cause of action, constitute an unlawful discriminatory practice against Plaintiff based on her sex in violation of NYSHRL §296.

181.   Plaintiff, a woman, is a member of a protected class.

182.   The acts which Plaintiff complains of herein supporting her claims for discrimination took place as a result of her membership in a protected class and all took place while she was an employee of the Village and in the course of her employment.

183.   The acts and conduct complained of herein supporting Plaintiff's claims for discrimination were committed by Village and LPD personnel who possessed and maintained direct supervisory authority over Plaintiff, and for whose acts the Village and LPD is liable.

184.   The acts and conduct complained of herein supporting Plaintiff's claims for discrimination were used as a basis for decisions affecting the terms, conditions, and privileges of Plaintiff's employment.

185.   As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon Plaintiff's employment, career, and life's normal pursuits,

all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

186.     Defendants' discriminatory conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

187.     As a direct and proximate result of Defendants' violation of Plaintiff's rights under the NYSHRL, Defendants are liable to Plaintiff for lost income, benefits, including advancements, commendations and promotions and compensatory damages pursuant to §297(4) (c) (iii) of the NYSHRL in an amount to be determined at trial.

188.     Plaintiff also seeks the imposition of the maximum civil fines and penalties against Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

189.     Plaintiff therefore seeks judgment on the Twelfth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements, and the imposition of the maximum civil fines and penalties under the NYSHRL.

### TWELFTH CAUSE OF ACTION FOR UNLAWFUL CONDUCT UNDER NYSHRL §296 (6)
### As Against All Defendants

190.     Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

191.    The individual defendants, by engaging in the conduct set forth at length above, which are all deemed a part of this cause of action, incited, compelled, aided and abetted in the violation of the New York State Human Rights Law.

192.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and will continue to suffer from, among other things, a significant loss of income, benefits, as well as other losses associated with the effects of Defendants' conduct upon Plaintiff's employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

193.    Defendants' discriminatory conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

194.    As a direct and proximate result of Defendants' violation of Plaintiff's rights under the NYSHRL, Defendants are liable to Plaintiff for lost benefits, including advancements, commendations and promotions and compensatory damages pursuant to §297(4) (c) (iii) of the NYSHRL in an amount to be determined at trial.

195.    Plaintiff also seeks the imposition of the maximum civil fines and penalties against Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for their willful, wanton, and malicious conduct.

196.    Plaintiff therefore seeks judgment for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements, and the imposition of the maximum civil fines and penalties under the NYSHRL.

## THIRTEENTH CAUSE OF ACTION FOR UNLAWFUL AND RETALIATORY
## CONDUCT UNDER NYSHRL §296 (7)
### As Against All Defendants

197.     Plaintiff repeats, realleges and incorporates each and every allegation previously stated in this Complaint with the same force and effect as if fully set forth herein.

198.     The acts committed by Defendants as set forth above, which are all deemed a part of this cause of action, constitute unlawful and retaliatory conduct against Plaintiff in violation of her rights under §296 (7) of the NYSHRL.

199.     The acts which Plaintiff complains of herein supporting her claim for retaliation took place as a result of and in retaliation for, including but not limited to, complaining to her supervisors about the discriminatory conduct towards her and filing a Charge of Discrimination.

200.     As a direct and proximate result of Defendants' retaliatory conduct, Plaintiff has suffered and will continue to suffer from, among other things, a significant loss of benefits, including advancements, commendations and promotions as well as other losses associated with the effects of Defendants' conduct upon her employment, career, and life's normal pursuits, all of which has had and will continue to have an irreparably devastating effect upon the quality of her life and will prevent her from functioning as she did prior to the conduct complained of herein.

201.     Defendants' conduct so degraded Plaintiff physically, mentally, and emotionally that, as a proximate result of Defendants' violation of her civil rights, Plaintiff has suffered, and will continue to suffer, among other things, mental and emotional injuries.

202.     As a direct and proximate result of Defendants' violation of Plaintiff's rights under the NYSHRL, Defendants are liable to Plaintiff for her lost benefits, including advancements, commendations and promotions and compensatory damages pursuant to NYSHRL §297(4)(c)(iii) in an amount to be determined at trial.

203.    Plaintiff also seeks the imposition of the maximum civil fines and penalties against Defendants pursuant to §297(4)(c)(vi) of the NYSHRL for its willful, wanton, and malicious conduct.

204.    Plaintiff therefore seeks judgment against Defendants on the Thirteenth Cause of Action for actual damages including loss of wages and benefits, compensatory damages in an amount to be determined at trial, plus costs and disbursements, and the imposition of the maximum civil fines and penalties under the NYSHRL.

## PRAYER FOR RELIEF

**WHEREFORE.** Plaintiff respectfully requests that this Court:

(a)  Declare the acts and practices complained of herein are in violation of 42 U.S.C. §1983, Title VII and the NYSHRL;

(b) Enjoin and permanently restraining these violations of 42 U.S.C. §1983, Title VII and the NYSHRL;

(c) Direct Defendants to take such affirmative action as is necessary to ensure that the effect of these unlawful employment practices is eliminated;

(d) Find that Defendants discriminated against Plaintiff in violation of 42 U.S.C. §1983, Title VII and the NYSHRL; and

(e) Enter judgment, against Defendants, where applicable, for all compensatory, emotional, physical, and punitive damages (where applicable), lost pay, front pay, injunctive relief, and any other damages permitted by law.  It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action together with such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to FRCP 38 (b), Plaintiff demands a trial by jury.

Dated:  White Plains, New York
          February 7, 2023

MURTAGH, COSSU, VENDITTI
& CASTRO-BLANCO LLP

s/ *Denise M. Cossu*
By: Denise M. Cossu (DC 6900)
1133 Westchester Avenue. N-202
White Plains, New York 10604
(914) 288-9595
(914) 831-6248 (Direct)
dcossu@mcvclaw.com
*Attorneys for Plaintiff*
*Lisa Pompilio*